IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMISSION | : : : : | |
| Plaintiff, | : : | Civil No. 2:16-cv-4291 |
| vs. | : : | Honorable Michael M. Baylson |
| JOHN T. PLACE, *et al.* | : : | |
| Defendants. | : : : | |

**MEMORANDUM OF LAW OF DEFENDANTS JOHN KIRK AND PAUL KIRK IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION………………………………………………………………1

II.   STATEMENT OF UNDISPUTED FACTS…………………………………..2

III.  ARGUMENT……………………………………………………………4

      A. Standard of Review………………………………………………..4

      B. Under 28 U.S.C. § 2462 SEC Enforcement Actions Seeking Civil Penalties,
         Disgorgement, Injunctive Relief, and Declaratory Relief Must be
         Commenced Within Five Years of the Date the Claim Accrues…………………..5

            1. Civil Monetary Penalties………………………………….………6

            2. Disgorgement……………………………….………………..6

            3. Injunctive Relief…………………………….………………..7

            4. Declaratory Relief ………………………….………………..9

      C. The Claims Alleged  by the SEC in the Complaint Accrued in 2006
         and are, therefore, Untimely………………………………………………10

IV.   CONCLUSION……………………………………………………………15

## TABLE OF AUTHORITIES

**Cases**

*Booth v. Pence*, 354 F. Supp. 2d 553 (E.D. Pa. 2005)……………………………….……………….4

*Celotex Corp v. Catrett,* 477 U.S. 317 (1986)…………………………………………….……….4

*Gabelli v. S.E.C.*, 568 U.S. 442 (2013)……………………………………………….……1,2,6,11

*Johnson v. S.E.C.*, 87 F.3d 484 (D.C. Cir. 1996)……………………………………..1,9

*Kokesh v. S.E.C.*, 137 S. Ct. 1635 (2017)…………………...…………………………………1,6,7

*Kornegay v. Cottingham*, 120 F.3d 392 (3d Cir. 1997)…………………………………………..4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………………………..5

*Railroad Telegraphers v. Railway Express Agency, Inc.,* 64 S. Ct. 582 (1944)…………………..1

*Saad v. S.E.C.*, 873 F.3d 297 (D.C. Cir. 2017)……………………………………………….…..9

*S.E.C. v. Bartek*, 484 F. App'x 949 (5th Cir. 2012)…………………………………………..1,7,8

*S.E.C. v. Gentile*, No. 16-1619, 2017 WL 6371301 (D.N.J. Dec 13, 2017)……………………1,8

*S.E.C. v. Graham,* 823 F.3d 1357 (11th Cir. 2016)……………………………….……1,8,9

*S.E.C. v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007)…………………………………………1,7

*S.E.C. v. Kokesh,*  884 F.3d 979 (10th Cir. 2018)…………………………………………...11

*Sierra Club v. Oklahoma Gas & Electric Co.,* 816 F.3d 673 (10th Cir. 2016)…………………..11

S*uperior Offshore Int'l, Inc. v. Bristown Group*, 490 F. App'x 492 (3d Cir. 2012)………………5

**Statues, Rules & Other**

Fed. R. Civ. P. 56(a)…………………………………………………………………………….4

28 U.S.C. § 2462………………………………………………………………1,5,11,14

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This case represents yet another in a long line of untimely cases filed by the SEC – this

one a ***decade*** after the events that formed the basis of a claim upon which the Commission could

have sued. *See*, *e.g.,Gabelli v. S.E.C.*, 568 U.S. 442 (2013); *Kokesh v. S.E.C.*, 137 S. Ct. 1635

(2017); *S.E.C. v. Graham,* 823 F.3d 1357 (11th Cir. 2016); *S.E.C. v. Bartek*, 484 F. App'x 949

(5th Cir. 2012); *S.E.C. v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007); *Johnson v. S.E.C.*, 87 F.3d

484 (D.C. Cir. 1996); *S.E.C. v. Gentile*, No. 16-1619, 2017 WL 6371301 (D.N.J. Dec 13, 2017).

There are strong societal reasons for adhering to statutes of limitations. Statutes of

limitations are intended to "promote justice by preventing surprises through the revival of claims

that have been allowed to slumber until evidence has been lost, memories have faded, and

witnesses have disappeared." *Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S.

342, 348-49 (1944). Because of the serious challenges created by stale claims, statutes of

limitations are strictly enforced, and the applicable statute here—28 U.S.C. § 2462—should be

as well.[1]

The SEC seeks to hold former brokers John Kirk and Paul Kirk personally accountable

for claims that accrued ***ten years*** before the Commission filed this suit. Specifically, the SEC

alleges that "[f]rom at least October 2006 until at least February 2014," the defendants engaged

in a fraudulent scheme to defraud large pension funds by failing to disclose their full

compensation. Compl. at ¶ 2; *see also id.* at ¶ 20 ("During ***the relevant period***, October 2006

---

[1] The applicable statute of limitations is contained in 28 U.S.C. § 2462, which prescribes a five-year limitations period for actions of this type, and is discussed more fully *infra*.

through February 2014, the defendants engaged in a fraudulent scheme . . . .") (Emphasis added). The Complaint in this case, however, was not filed until *August 8, 2016* – some *ten years* after the alleged claims accrued and almost *five years* after the applicable statute of limitations had expired.

Moreover, the SEC cannot allege that they are exempt from the applicable statute of limitations because they did not discover the fraud until sometime within the scope of the relevant statute. The Supreme Court has made clear that, regardless of when a fraud is uncovered, the "discovery rule" for statute of limitations purposes does not apply to the SEC. *See Gabelli v. S.E.C.,* 568 U.S. 442, 448-50 (2013). Accordingly, as discussed more fully herein, the operative question is *when* did the facts that give rise to the claims at issue occur. As this brief makes abundantly clear, the SEC, through its Complaint, has answered that question definitively and to its extreme prejudice.

Because the applicable statute of limitations expired years before the Complaint was filed, the Commission's claims are time-barred and, consequently, must be dismissed.

## II.    STATEMENT OF UNDISPUTED FACTS

1.      Between 2006 and 2014, Global Transition Solutions ("GTS")[2] was registered as a broker-dealer with the SEC. Compl. at ¶ 15.

2.      GTS, starting in 2006, provided transition management services, mostly to public pension funds, which needed to execute large securities transactions in a coherent and timely fashion. Compl. at ¶ 21.

_____

[2] There are two GTS entities—GTS, Inc. and GTS, LLC. They conducted the same business and, for the purposes of this motion, all references herein to "GTS" shall refer to both GTS, Inc. and GTS, LLC.

3.      John Kirk became affiliated with GTS in the early summer of 2004, before the

firm commenced operations, and later received an ownership interest in the firm. *See*

Declaration of John P. Kirk at ¶ 3.[3]

4.      Paul Kirk joined GTS as general counsel in August 2006 and became a

compliance principal in April 2009. He never held any ownership interest in the firm. *See*

Declaration of Paul G. Kirk at ¶ 3.[4]

5.      GTS ceased operations in June 2014. *See* Declaration of John P. Kirk at ¶ 4;

Declaration of Paul G. Kirk at ¶ 5.

6.      John Kirk and Paul Kirk have not been involved in the securities industry in any

capacity since 2014, nor do they maintain any securities licenses. *See* Declaration of John P. Kirk

at ¶ 6; Declaration of Paul G. Kirk at ¶ 11.

7.      Plaintiff did not file its Complaint until August 8, 2016. Compl. at p. 33.

8.      The Complaint alleges that defendants (including GTS, John Kirk, and Paul Kirk)

engaged in a scheme to defraud customers between October 2006 and February 2014 by failing

to adequately disclose all sources of compensation. Compl. at ¶¶ 2-7.

9.      The SEC has defined the "relevant time period" in its Complaint as "[f]rom at

least October 2006 until at least February 2014." Compl. at ¶¶ 2, 20.

10.     Plaintiff seeks the following relief from defendants John Kirk and Paul Kirk:

> (A)  injunctive relief permanently enjoining them from violating
> the following statutes: 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
> Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 20(a) of the

---

[3] The Declaration of John P. Kirk is attached hereto as Exhibit 1.

[4] The Declaration of Paul G. Kirk is attached hereto as Exhibit 2.

Exchange Act [15 U.S.C. § 78t(a)]; and Section 20(a) of the Exchange Act [15 U.S.C. § 78t(e)];

(B) joint and several disgorgement, with prejudgment interest, for all illicit profits or other ill-gotten gains received by any person or entity as a result of the actions alleged in the Complaint;

(C) declaratory relief finding that Defendants violated the antifraud provisions of the federal securities laws as alleged in the Complaint;

and

(D) civil monetary penalties.

Compl. at p. 32.

III.   **ARGUMENT**

### A.  Standard of Review

"Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997); Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

"To avoid summary judgment, the non-moving party must produce more than a 'mere scintilla' of evidence to demonstrate a genuine issue of material fact." *Booth v. Pence*, 354 F. Supp. 2d 553, 557 (E.D. Pa. 2005). "If the [non-moving party's] evidence is merely colorable, or

is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

"In order for a dispute to be 'genuine,' the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts' but must instead 'come forward with specific facts showing that there is a genuine issue for trial.'" S*uperior Offshore Int'l, Inc. v. Bristown Group*, 490 F. App'x 492, 496-97 (3d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

**B. Under 28 U.S.C. § 2462 SEC Enforcement Actions Seeking Civil Penalties, Disgorgement, Injunctive Relief, and Declaratory Relief Must be Commenced Within Five Years of the Date the Claim Accrues.**

As noted above, the SEC seeks four types of relief against defendants John Kirk and Paul Kirk: (1) civil monetary penalties  (2) disgorgement, (3) permanent injunctions, and (4) a declaration that defendants violated certain federal securities laws. All four forms of relief are governed by the five-year statute of limitations prescribed by 28 U.S.C. § 2462, which provides as follows:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date ***when the claim first accrued*** if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462 (emphasis added).

5

Twice the Supreme Court has considered the applicability of Section 2462 to SEC

enforcement actions and twice the Court has concluded—both times ***unanimously***—that specific

types of SEC enforcement actions are subject to Section 2462's five-year statute of limitations.

*See Gabelli v. S.E.C.*, 568 U.S. 442, 448-52 (2013) (applying Section 2462 to SEC enforcement

actions seeking monetary penalties); *see also Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1639 (2017)

(applying Section 2462 to SEC enforcement actions seeking disgorgement). Several lower courts

have applied the reasoning in *Gabelli* and *Kokesh* to SEC enforcement actions seeking injunctive

and declaratory relief. Because the present SEC enforcement action was commenced ***ten years***

after the alleged claims accrued and ***five years*** prior to the cut-off date prescribed by the

applicable statute of limitations, all of the SEC's claims must be dismissed as untimely.

### 1.    Civil Monetary Penalties

The Supreme Court first considered the applicability of Section 2462's five-year statute

of limitation in the context of an SEC enforcement action seeking monetary penalties. In *Gabelli*,

the Supreme Court ruled that civil monetary penalties are within the purview of Section 2462

because they are punitive in nature. *Gabelli*, 568 U.S. at 451. Moreover, *Gabelli* held that the

five years starts to run from the date when ***the claim accrued***, not when it was discovered. *Id.* at

448-51. It is, therefore, beyond dispute that the SEC's claim for civil monetary penalties is

subject to the five-year statute of limitations contained in Section 2462.

### 2.    Disgorgement

Four years after *Gabelli* was decided, the Supreme Court again considered the application

of Section 2462 to SEC enforcement actions—this time to a case seeking disgorgement—and

unanimously held that an SEC claim for disgorgement also constitutes a "penalty" subject to

Section 2462's five-year statute of limitations. *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1639 (2017). The Court observed that while disgorgement may sometimes serve compensatory purposes, it is primarily a ***punitive*** measure designed for deterrence. *Id.* at 1643-44. The Court concluded: "Because disgorgement orders 'go beyond compensation, are intended to punish, and label defendants wrongdoers' as a consequence of violating public laws, . . . they represent a penalty and thus fall within the 5-year statute of limitations." *Id*. at 1645 (quoting *Gabelli*, 568 U.S. at 451-52). Accordingly, "any claim for disgorgement in an SEC enforcement action must be commenced within five years of the date the claim accrued." *Id*.

   3.       **Injunctive Relief**

   Section 2462's five-year statute of limitations also properly applies to SEC enforcement actions seeking injunctive relief, because, at least in this case, the purpose of the injunction is primarily  penal. *See* discussion *infra*. In *S.E.C. v. Bartek*, the Fifth Circuit affirmed the district court's grant of summary judgment for the defendants, finding that the relief  sought by the SEC —a permanent injunction and an "officer-and-director bar"—was penal in nature and, hence, was subject to the five-year statute of limitations contained in Section 2462. *S.E.C. v. Bartek*, 484 F. App'x 949, 956-57 (5th Cir. 2012). The Court of Appeals concluded that "[b]ased on the severity and permanent nature of the sought-after remedies, the district court did not err[] in denying the SEC's request on grounds that the remedies are punitive, and thus subject to Section 2462's time limitations." *Id.* at 957. *See also S.E.C. v. Jones*, 476 F. Supp. 2d 374, 385 (S.D.N.Y 2007) (concluding that the SEC's request for a permanent injunction or bar "can only be characterized

as a penalty," "is subject to the five-year limitations period of § 2462," and "must be dismissed as untimely").[5]

Similarly, in *S.E.C. v. Gentile*, the United States District Court for the District of New Jersey dismissed the SEC's amended complaint, and held that the requested relief—an "obey-the-law" injunction and a bar from trading penny stocks—was punitive in nature and thus subject to Section 2462's five-year statute of limitations. *S.E.C. v. Gentile*, No.16-1619, 2017 WL 6371301, at *4 (D.N.J. Dec 13, 2017). In reaching its conclusion, the district court reasoned that an "obey-the-law" injunction that "require[d] Defendant to obey the already established federal laws and regulations relating to securities" would, nonetheless, "stigmatize Defendant in the eyes of the public" and would have no remedial effect. *Id*. As the court explained, the injunction would only serve to punish the defendant and "would merely restrict Defendant's business structure and methodology, in perpetuity, simply because he was alleged to have violated securities laws when he purportedly was involved in the . . . schemes." *Id*. (emphasis omitted).

The facts in this case demonstrate that the injunctive relief sought by the SEC is indeed a penalty, because it is intended solely to punish defendants for past conduct, much of which occurred more than a decade ago. Clearly, the injunctive relief sought is not remedial, because

---

[5] The circuit courts are split over whether an injunction always constitutes a penalty under Section 2462. While the Fifth Circuit has concluded that an injunction is such a penalty, the Eleventh Circuit has reached the opposite conclusion. *Compare S.E.C. v. Bartek*, 484 Fed. App'x 949 (5th Cir. 2012), *with S.E.C. v. Graham*, 823 F. 3d 1357 (11th Cir. 2016). Further, in *S.E.C. v. Collyard,* the Eighth Circuit determined that an "obey the law" injunction was not time barred by Section 2462 because (1) the injunction only required defendant to obey the law; (2) was based on evidence of a likelihood of future violations in light of defendant's past violation of the securities laws, the nature of the violation in the case and the fact that the wrongful conduct continued after the action was brought; and (3) it sought to protect the public prospectively from defendant's wrongful conduct rather than punish him. *S.E.C. v. Collyard,* 823 F.3d 1357 (8th Cir. 2017). *Collyard* is easily distinguishable, however, because, in that case the defendant was still in the securities industry and posed a threat to continue the  unlawful conduct (which allegedly continued after the filing of the complaint). In this case, in marked contrast, defendants are no longer involved in the securities industry, do not maintain any securities licenses, and have no intention of entering the industry again. *See* Declaration of John P. Kirk at ¶¶ 5-7; Declaration of Paul G. Kirk at ¶¶ 8,11-12.

there is little, if any, prospect for future violations. Defendants have not been in the securities

industry since 2014 and do not intend to enter the securities industry again. *See* Declaration of

John P. Kirk at ¶ 6; Declaration of Paul G. Kirk at ¶ 11. Similarly, defendants do not maintain

any securities licenses, and are engaged in wholly different professions. *See* Declaration of John

P. Kirk at ¶¶ 5-7; Declaration of Paul G. Kirk at ¶¶ 8,11-12. In the same vein, there is no

prospect of protecting the public through a permanent injunction based on prior conduct.

Moreover, the injunctive relief sought by the SEC does not merely stigmatize them as

wrongdoers; it also serves as a predicate to expelling them from the securities industry, which in

this instance, would only further stigmatize and punish them.[6]

Because, the SEC is seeking to punish defendants for past conduct that occurred more

than ten years before the SEC filed suit, the requested injunctive relief is punitive in nature and,

therefore, subject to the statute of limitations imposed by Section 2462.

### 4.      **Declaratory Relief**

Lastly, the declaratory relief sought by the SEC operates as a penalty under Section 2462,

and is also subject to the five-year statute of limitations. In *S.E.C. v. Graham*, the Eleventh

Circuit explained that a public declaration of liability that the defendants violated the law "does

little other than label the defendants as wrongdoers," "serves neither a remedial nor preventative

purpose," and "is designed to redress previous infractions rather than to stop any ongoing or

future harm." *S.E.C v. Graham,* 823 F.3d 1357, 1362 (11th Cir. 2016). Thus, the Court of

---

[6] In *Saad v. S.E.C.*, the D.C. Circuit Court stated, in light of *Kokesh*, that an expulsion or suspension from the securities industry was a penalty because it was punitive and not remedial. *Saad v. S.E.C.*, 873 F.3d 297, 305 (D.C. Cir. 2017) (Kavanaugh, J., concurring) ("in light of the Supreme Court's analysis in *Kokesh*, expulsion or suspension of a securities broker is a penalty, not a remedy"). *See also  Johnson v. S.E.C.*, 87 F.3d 484, 488 (D.C. Cir. 1996) ("the sanctions imposed by the SEC—censure and a six-month suspension—clearly resemble punishment in the ordinary sense of the word").

Appeals concluded that, because declaratory relief for past conduct "fits the definition of a

penalty," the five-year statute of limitations in § 2462 applies to the declaratory relief sought by

the SEC in that case. *Id.* at 1363.[7]

Based on the foregoing, all four forms of relief sought by the SEC—civil penalties,

disgorgement, an injunction against future violations, and a declaration that defendants John Kirk

and Paul Kirk have violated federal securities laws—are governed by Section 2462's five-year

statute of limitations.

**C. The Claims Alleged  by the SEC in the Complaint Accrued in 2006 and are, therefore, Untimely.**

According to the SEC's own Complaint, the conduct in this case as (as alleged)

constitutes a single fraudulent scheme that commenced, "at least [in] October 2006." Compl. at

¶¶ 2, 20. While the identity of the routing brokers through whom GTS conducted their allegedly

fraudulent scheme changed somewhat over the  period covered by the Complaint, the conduct

which constitutes the purported violations here – *i.e.,* GTS's transition management services,

marketing practices and disclosures – did not change appreciably over time.  Nonetheless, the

SEC waited ***nearly a decade*** to bring its claims against defendants, filing its Complaint on

August 8, 2016. Because the alleged violations contained in Counts I, III, and IV first accrued in

_____

7 Ironically, the factors that the Eleventh Circuit used in evaluating the penal nature of declaratory relief in *Graham* — labeling defendants as wrongdoers, serving no remedial or preventative purpose and redressing previous, rather than present harm—all support the conclusion that *both* the injunctive and declaratory relief sought here by the Commission are penal in nature. A final judgment based on fraud clearly labels a defendant as a wrongdoer (and the SEC does it utmost to enhance this label by issuing a press release detailing "the fraud"). Moreover, the requested relief does nothing to protect the public currently from conduct that occurred four to twelve years ago by a defunct corporation, allegedly by people who resigned their licenses years ago and who are pursuing different careers (law and marketing). The Commission has a single purpose here: to punish defendants for conduct that occurred more than five years before the filing of the Complaint.

October of 2006, all of the SEC's claims are barred by the five-year statute of limitations contained in 28 U.S.C. § 2462.

As previously noted, Section 2462 provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date **when the claim first accrued** if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." 28 U.S.C. § 2462 (emphasis added).[8] The Supreme Court has made clear when the SEC seeks to bring a civil suit seeking penalties for securities fraud, Section 2462's five-year statute of limitations begins to run **when the fraud occurs**, not when it is discovered. *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013).

Therefore, when a claim first accrues is vital to applying the five-year statute of limitations in Section 2462. "[T]he 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'" *Id.* at 448. In other words, a claim accrues as soon as the plaintiff can file suit and obtain relief. *Sierra Club v. Oklahoma Gas & Electric Co.,* 816 F.3d 673 (10th Cir. 2016). "And a continuing violation is actionable even before the last act of the violation where the conduct that has already occurred is sufficient to support a claim". *Id.* at 673.

The explanation of a continuing violation by the Tenth Circuit in *Kokesh* (following remand) is instructive. The defendant in *Kokesh* was charged with misappropriating funds from four business development companies from 1995 through 2006. *S.E.C. v. Kokesh,* 884 F.3d 979 (10th Cir. 2018). The Court of Appeals concluded that the defendant's misappropriations of funds in that case should be viewed as separate and discrete violations and not a single violation

---

[8] The SEC does not allege in its Complaint that either the defendants or relevant property was located outside of the United States.

11

because the misconduct was not: (1) a continuing omission to act in compliance with a duty; (2) the very nature of the misconduct did not involve repeated misconduct; and (3) the SEC's claim did not depend on the cumulative nature of the defendant's acts. *Id*. The Court, therefore, held that the defendant was liable for disgorgement of funds in the five years preceding the filing of the SEC's complaint. *Id.*

In this case, application of the *Kokesh* factors demonstrates conclusively that the conduct alleged in the Complaint constitutes a single, unified, continuing violation, which could have been sued on as early as October of 2006 (the date of the first allegedly fraudulent transaction according to the SEC's Complaint). This conclusion is buttressed by several facts.

First, the SEC has alleged that defendants engaged in a continuing failure to act in compliance with a duty, namely, the duty to make full and fair disclosure to its transition management clients. Compl. at ¶¶ 6, 29. In support of its claim, the SEC alleges that defendants John and Paul Kirk were licensed securities professionals and, as such, "***had a heightened duty*** to disclose the hidden mark-ups and revenue and to insure *[sic]* the accuracy of their claims and the various pre- and post-trade reports they sent to customers." Compl. at ¶ 96 (emphasis added). *See also,* SEC Responses to Defendants' First Set of Document Requests and Interrogatories (hereinafter, "SEC Discovery Responses") at 3 ("The failure to disclose its true revenue model . . . amounted to a material omission of a fact that GTS, as a fiduciary, ***had a duty to disclose***.") (emphasis added.)[9] The Complaint goes on to catalogue in chronologically exquisite detail GTS's allegedly fraudulent disclosures that commenced in "October of 2006" and which form the basis for this suit. *See* Compl., *passim.*

---

[9] The SEC's Discovery Responses are attached hereto as Exhibit 3.

Second, the conduct at issue here was – according to the SEC's own allegations – an ongoing scheme in which the same misconduct – allegedly making misleading disclosures regarding the receipt of mark-ups – was purportedly repeated with dozens of customers using similar, if not identical, language. *See, e.g.,* SEC Discovery Responses at 2-3 ("In its contracts, promotional materials, correspondence, presentations, and responses to client requests for proposals, GTS *repeatedly* represented that it would serve as its clients' fiduciary . . . . GTS also *repeatedly* [and falsely] stated its fiduciary duties included cost reduction and the avoidance of conflicts of interest . . . Each contract, promotional material, correspondence, presentation and response to client requests for proposals during the Relevant Time Period . . . amounted to a deceptive act in furtherance of the scheme, giving rise to liability [under the federal securities laws].") (Emphasis added.)

Finally, the SEC's claims are wholly dependent on the cumulative nature of the conduct alleged. According to the Complaint, "***Throughout the scheme***, the defendants induced their customers to use . . . GTS to handle their transitions through a variety of misleading and false statements as to GTS's fees and other aspects of its trading process." Compl. at ¶ 30 (emphasis

13

added). Indeed, the SEC goes so far as to allege that "GTS's [entire] business model was a

fraudulent scheme." SEC Discovery Responses at 3.[10]

      In contrast to *Kokesh*, the SEC does not allege discrete instances of misappropriation or

fraud that occurred *seriatim*. Instead, as discussed in detail above, the Complaint makes repeated

reference to the cumulative nature of the conduct to form the causes of action in Counts I, III,

and IV. The SEC does not specify new types of fraud or conduct as time goes forward, but rather

states that the alleged conduct was substantially the same throughout the relevant period in that

the defendants failed to disclose all forms of revenue that GTS would receive for providing

transition management services for its customers. Under the law and according to the SEC's own

allegations, a potentially actionable claim existed in October of 2006. Nevertheless, the SEC

waited until August 8, 2016, approximately ***ten years after*** the alleged claims in this case

accrued, to file this suit.

      Such delay is clear and inexcusable and leads to the inescapable conclusion that all of

Plaintiff's claims are time-barred under the five-year statute of limitations prescribed by 28

U.S.C. § 2462.  Accordingly, the SEC's claims in Counts I, III and IV should be dismissed with

---

[10] The SEC chose to charge this case as a "scheme," and a scheme, by its very nature, requires repeated misconduct that is cumulative in nature and is charged as one actionable claim. The SEC alleges that, starting in October of 2006 and running through February of 2014, "the defendants engaged in a fraudulent scheme to conceal from their customers and prospective customers their practice of reaping undisclosed proceeds…." Compl. at ¶ 20. Specifically, the SEC alleges that, "[f]rom at least 2006, the defendants began to coordinate with ConvergEX, which had by then been spun off as a separate business entity, to impose and share mark-ups on GTS's customers' orders, while at the same time concealing such revenue from GTS's customers." *Id.* at ¶ 36. The Complaint further alleges that the defendants perpetrated their scheme by repeatedly failing to act in compliance with their duty to customers to disclose all sources of revenue that GTS received. *See, e.g.*, Compl. at § IV ("The defendants ***continued*** to make misrepresentations to customers while secretly sharing mark-ups with Routing Broker 1: 2011 to 2013") (emphasis added); *id.* at ¶ 71 ("During this period the defendants ***continued*** to share in mark-ups taken by Routing Broker 1 on GTS's customers' transition transactions and failed to disclose the fees to customers") (emphasis added); *id.* at ¶ 82 ("The defendants' scheme of sharing in undisclosed revenue ***continued*** with Routing Broker 2") (emphasis added).

prejudice, and judgment should be entered in favor of defendants John Kirk and Paul Kirk as a

matter of law.

**IV.     CONCLUSION**

For the foregoing reasons, Counts I, III and IV of the Complaint should be dismissed

with prejudice and judgment should be entered in favor of defendants John Kirk and Paul Kirk.

Respectfully Submitted,


LEVAN LEGAL LLC

By: */s/ Richard A. Levan*
Richard A. Levan Esq. Bar ID. 50019
Jon-Jorge Aras, Esq.  Bar ID. 314967
Two Bala Plaza
Suite 300
Bala Cynwyd, PA 19004
610-688-7781

*Attorneys for Defendants John Kirk and
Paul Kirk*

Date: June 15, 2018

15