# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>v.<br><br>JOHN T. PLACE, PAUL G. KIRK, JOHN P. KIRK, GLOBAL TRANSITION SOLUTIONS, Inc., and GLOBAL TRANSITION SOLUTIONS, LLC | CIVIL ACTION<br><br>NO. 16-4291 |

## MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                                                   December 21, 2018

## I.    Introduction

In this case, the Securities and Exchange Commission ("SEC") alleges that the brokerage firms Global Transition Solutions, Inc. and Global Transition Solutions, LLC (together, "GTS"); John Kirk, GTS, LLC's President; Paul Kirk, GTS's General Counsel and Chief Operating Officer; and John Place, GTS, LLC's Chief Executive Officer committed securities fraud by misleading current and prospective clients about the true nature of their costs in connection with transitioning their portfolios. The Complaint alleges four causes of action under federal securities laws.

1. **Count I**: Violations of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 against Defendants John Kirk; Paul Kirk; John Place; GTS, Inc.; and GTS, LLC.

2. **Count II**: Violations of Section 15(c)(1) of the Exchange Act against Defendant GTS, Inc.

3. **Count III**: Control personal liability under Section 20(a) of the Exchange Act for violations of Exchange Act §§ 15(c)(1) and 10(b) and Rule 10b-5 thereunder against Defendants John Kirk, Paul Kirk, and John Place.

4. **Count IV**: Liability under Section 20(e) of the Exchange Act for aiding and abetting violations of Exchange Act Section 15(c)(1) against Defendants John Kirk, Paul Kirk, and John Place.

The SEC seeks permanent injunctions against Defendants to enjoin them from engaging in acts, practices, and courses of business alleged in the Complaint; disgorgement of all profits realized from Defendants' unlawful conduct; and civil penalties pursuant to Section 21(d)(3) of the Exchange Act. (ECF 1, Compl. ¶ 8.)

John and Paul Kirk (together, "the Kirks" or "Defendants") have moved for summary judgment on all claims against them–Counts I, III, and IV of the Complaint–arguing that the claims are time-barred. The SEC has also moved for summary judgment on liability on its claims under Sections 10(b) and 20(a) of the Exchange Act against Defendants–Counts I and III of the Complaint. The Court is not ruling on the SEC's Motion for Summary Judgment at this time. For the reasons discussed below, the Kirks' Motion for Summary Judgment is denied.

## II. Undisputed Facts

The following is a fair account of the factual assertions at issue in this case, as taken from the parties' Statements of Facts and briefing, are not genuinely disputed. Due to the volume of facts in the record, the factual background is limited to the facts material to both Motions for Summary Judgment presently before this Court.

GTS, LLC and GTS, Inc. operated as a single transition management brokerage consulting business from October 2006 to February 2014. (ECF 44, Ex. 2, "SEC SOF" ¶ 4.) GTS[1], a broker-dealer registered with the SEC, provided transition management services mainly to public pension funds, which needed to execute large securities transactions in a coherent and timely fashion. (Compl. ¶¶ 15, 21; Defs.' MSJ, at 2; SEC MSJ, at 4; SEC SOF ¶ 4.)

GTS, like other transition managers, would generally be hired to reduce the costs of transitioning clients' investment strategies or investment managers. (SEC MSJ, at 6.) In selecting

---

[1] The parties' Motions for Summary Judgment refer to both GTS, Inc. and GTS, LLC as "GTS." (ECF 45, "Defs.' MSJ," at 2 n.2.; ECF 44, "SEC MSJ," at 4.)

a transition manager, clients would typically consider their questionnaire responses, as well as meetings with transition managers about explicit costs. (Id.; SEC SOF ¶¶ 18–19.)

GTS client contracts, marketing materials, presentations, and questionnaire responses conveyed that it was GTS's "mission," and "exclusive" or "sole" purpose, to reduce costs. (SEC SOF ¶¶ 67, 96.) GTS marketing literature and client contracts also stated that GTS would act as a fiduciary to its clients, that it had no conflict of interest with its clients, and that GTS would inform clients, with "total transparency," how much a portfolio change cost them after the transaction was completed. (Id. ¶¶ 63, 69, 77–78.)

Once hired, GTS would administer and manage the process of transitioning clients' portfolios. (Id. ¶ 20.) In this process, GTS typically prepared for, and provided oversight of, trading; provided updates to clients; and generated pre- and post-trade reports. (Id.) GTS did not execute these trades, take possession of assets, or serve as a custodian. (Id. ¶ 21.) Rather, GTS would send trades to a broker of record ("BOR"), which would typically route trades through executing brokers. (Id.)

Defendant John Kirk joined GTS in the summer of 2004 (Id. ¶ 1; Defs.' MSJ, at 3.) Later, John Kirk became the President and 48.5% owner of GTS, LLC and a registered representative of GTS, Inc. (Defs.' MSJ, at 3; id. Ex. 1, "John Kirk Decl." ¶ 3; SEC SOF ¶ 1; ECF 62 "Defs.' Am. SOF" ¶ 1.) In 2007, John Kirk's ownership interest in GTS, LLC was reduced "following the infusion of capital into GTS by others." (Defs.' Am. SOF ¶ 1.) Along with Defendant John Place, GTS, LLC's Chief Executive Officer, and GTS's compliance personnel, John Kirk authorized and often scripted the content of GTS's communications with current and prospective clients and consultants. (SEC SOF ¶¶ 46–48; Defs.' SOF ¶ 46.) He also reviewed pre- and post-trade reports

3

along with Stephen Malinowski, John Place, and Peter Romanelli before they were given to clients or consultants. (SEC SOF ¶ 46; Defs.' SOF ¶ 58.)

Defendant Paul Kirk, John Kirk's brother, joined GTS in August 2006 as General Counsel. (SEC SOF ¶ 3.) He was also the Chief Operating Officer of GTS, LLC and a registered principal of GTS, Inc. (SEC SOF ¶ 3; SEC MSJ, at 5.) In April 2009, he became a compliance principal of GTS and first obtained "supervisory responsibilities at GTS." (Defs.' MSJ, at 3; Defs.' Am. SOF ¶ 3.) At GTS, LLC, he reported to John Place. (ECF 48, "Defs.' Opp'n," at 16.) At GTS, Inc., he reported to its owner, James Zogby. (Id.; SEC SOF ¶ 7.) In these positions, he reviewed and approved GTS's promotional literature and client communications, reviewed pre- and post-trade reports before they were provided to clients or consultants, and, beginning in 2009, signed contracts on behalf of GTS. (SEC SOF ¶¶ 3, 49.) However, he did not negotiate client contracts. (SEC SOF ¶¶ 9, 49; Defs.' Opp'n, at 16.)

GTS engaged in revenue sharing with BORs, including Convergex and INTL, in connection with the transition of securities. (SEC SOF ¶ 23.) Between October 2006 and October 2011, Convergex shared approximately $8.8 million of revenue with GTS. (Id. ¶ 111; Defs.' Am. SOF ¶ 111.) Between November 2011 and February 2013, INTL shared $1,468,700 with GTS in connection with transitions. (SEC SOF ¶ 114; Defs.' Am. SOF ¶ 114.)

Both John and Paul Kirk knew that GTS and BORs shared in revenues in connection with transitions, and the Kirks had access to GTS's financial records, which they reviewed regularly. (SEC SOF ¶ 42; Defs.' Am. SOF ¶ 42.) John Place typically communicated with Convergex and INTL and handled trade oversight, but John Kirk handled communications with BORs when Place was sick or unavailable. (SEC SOF ¶ 118; Defs.' Am. SOF ¶ 118.)

GTS client contracts stated that the BOR would charge stated commissions, and typically stated that the broker of record "will remit a portion of the commissions/fees to GTS and disclose this arrangement on each confirmation it generates for Client's account." (Id. ¶ 98; Defs.' Am. SOF ¶¶ 86, 89, 90, 98.) GTS also provided brokers and clients with "transaction cost analysis," or "TCA," a service in which GTS would review past transactions so that brokers and clients could evaluate broker performance based on execution cost and other factors. (SEC SOF ¶ 40; Defs.' Am. SOF ¶ 40.) When Paul Kirk invoiced Convergex and INTL in connection with transitions, the invoices often listed "TCA" as the basis for payment. (SEC SOF ¶ 121; Defs.' Am. SOF ¶ 121.)[2] GTS maintained a separate bank account to receive revenues separate from stated commission fees. (SEC SOF ¶ 8.)

Both John and Paul Kirk were subordinate to John Place. (Defs.' Opp'n, at 15–16.) As General Counsel, Paul Kirk's duties were delegated by Place. (Id. at 16.) In October 2012, Place removed both Paul and John Kirk from their positions as General Counsel and President, respectively. (Id.; SEC SOF ¶ 56.) GTS ceased operations in June 2014. (Defs.' MSJ, at 3.) Since 2014, neither John nor Paul Kirk has been involved in the securities industry, and they do not maintain securities licenses. (Id.)

## III. Procedural History

On August 8, 2016, Plaintiff SEC filed the Complaint in this Court against Defendants GTS, Inc., GTS, LLC, the Kirks, and Place, alleging that Defendants engaged in a scheme to defraud customers between October 2006 and February 2014 by failing to adequately disclose all

---

[2] Defendants deny SEC SOF ¶ 121 only to clarify that Paul Kirk would invoice the clients as instructed by John Place. (Defs.' Am. SOF ¶ 121.)

sources of compensation. (ECF 1, Compl. ¶¶ 2–7.) The Kirks filed an Answer to the Complaint along with Affirmative Defenses on April 7, 2017 (ECF 25).

On June 15, 2018, the SEC filed a Consent Motion for Entry of Judgment on Liability against Defendant Place (ECF 42), along with the Consent of Place (ECF 43, Ex. 1). That same day, the SEC also filed a Motion for Summary Judgment on liability on its Sections 10(b) and 20(a) claims–Counts I and III of the Complaint–against the Kirks (ECF 44). The Kirks filed an Opposition on August 10, 2018 (ECF 48), and the SEC filed a Reply on September 7, 2018 (ECF 50).

Also on June 15, 2018, the Kirks filed a Motion for Summary Judgment, contending that the SEC's claims against them–Counts I, III, and IV of the Complaint–should be dismissed as time-barred (ECF 45). The SEC filed an Opposition in response on August 10, 2018 (ECF 49, "SEC Opp'n"), and the Kirks filed a Reply on September 7, 2018 (ECF 51, "Defs.' Rep.").

On October 18, 2018, the Court ordered Defendants to file a Response to the SEC's Statement of Facts, specifically indicating its contentions as to material facts that are not in dispute. (ECF 53). Defendants accordingly filed a Response on November 1, 2018 (ECF 54). Defendants moved for leave to file an amended Response to the SEC's Statement of Facts and amended Declarations of the Kirks on November 2, 2018 (ECF 55). The amended Response was attached to the Motion for Leave to Amend as Exhibit A (ECF 55 Ex. A).

Following a November 8, 2018 hearing on all open Motions (ECF 57), this Court issued an Order granting the SEC's Consent Motion for Entry of Judgment of Liability against Defendant Place, overruling Defendants' general objections to the SEC's Statement of Facts, ordering Defendants to file a Second Amended Response and Seconded Amended Declarations in response to the SEC's Motion for Summary Judgment on liability, and allowing the SEC to file annotated

6

slides and a Reply to the Second Amended Response (ECF 61). Defendants filed a Second Amended Response and Second Amended Declarations of the Kirks on November 15, 2018 (ECF 62). The SEC filed a Reply and annotated slides on November 26, 2018 (ECF 65, "SEC Am. Rep."; id. Ex. 1, "SEC Slides"), and Defendants filed slides in response on December 3, 2018 (ECF 66, "Defs.' Slides").

## IV. Parties' Contentions

### A. The Kirks' Motion for Summary Judgment

In Defendants' Motion for Summary Judgment, they contend that this Court should dismiss the SEC's securities fraud claims against them–Counts I, III, and IV of the Complaint–because these claims are time-barred. (Defs.' MSJ, at 5–13.) The SEC alleges that Defendants engaged in a fraudulent scheme that originated in 2006 and continued until 2014. On this basis, the Kirks argue that therefore, the SEC alleges a single, continuing scheme, and that the Complaint, which is filed in 2016, is untimely. (Id. at 14.)

Defendants contend that the relief the SEC seeks against them–civil monetary penalties, disgorgement, permanent injunctions, and a declaration that Defendants violated federal securities laws–are all subject to the five-year statute of limitations set forth in 28 U.S.C. § 2462. (Id. at 5.) In particular, Defendants argue that the SEC's request for injunctive relief is a "penalty" subject to Section 2462 because it would only serve to punish Defendants for past conduct.

### B. SEC's Opposition to the Kirks' Motion for Summary Judgment

In response, the SEC contends that the claims against Defendants are not time-barred because the Kirks committed a series of discrete violations of securities laws, some of which occurred within the five-year statute of limitations. (SEC Opp'n, at 2.) The SEC argues that GTS's deceptive acts and misrepresentations over multiple transactions constitute an overarching

7

fraudulent scheme, not a single violation outside the statute of limitations. (Id. at 5.) According to the SEC, the statute of limitations for each violation began to run on the date it occurred, and therefore, the SEC's claims based on misconduct that occurred within five-years of the Complaint are not untimely. (Id.)

The SEC does not dispute that neither the Supreme Court nor the Third Circuit have determined whether a request for injunctive relief is a "penalty" subject to the five-year statute of limitations imposed by Section 2462. (Id. at 7.) However, the SEC alleges that because Defendants' misconduct straddled the five-year cut-off date of the limitations period, and the SEC seeks injunctive relief based on Defendants' violations within the statutory period, the circuit split is irrelevant to this Court's determination. (Id. at n.2.) The SEC does not address whether declaratory relief is subject to Section 2462.

**C. The Kirks' Reply to the SEC's Opposition**

Defendants' Reply contends that the facts in the record make clear that the SEC alleged a single, continuous fraud that arose before the five-year statutory period, barring the SEC's claims. (Defs.' Rep. at 4.) Defendants also contend that the five-year statute of limitations applies to the SEC's request for injunctive relief, citing a recent decision in the Eastern District of New York. (Id. at 4) (citing SEC v. Cohen, No. 17-cv-00530-NGG-LB, 2018 WL 3455403 (E.D.N.Y. July 12, 2018) (holding that the SEC's requested injunction to prohibit the defendants from violating securities laws in the future operated "at least partly" as a "penalty" and was therefore time-barred under Section 2462)).[3]

---

[3] In the Annotated Slides, Defendants also argue for the first time that the Complaint should be dismissed because the SEC fails to plead with particularity that Defendants committed securities fraud under Federal Rule of Civil Procedure 9(b). (Defs.' Slides, at 14.) Defendants are correct that claims pursuant to Section 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). See Key Equity Inv'rs, Inc. v. Sel-

8

## V. Summary Judgment Legal Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Federal Rule of Civil Procedure 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Id. at 255.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule, [] set forth specific facts showing a genuine issue

---

Leb Mktg. Inc., 246 F. App'x 780, 784 (3d Cir. 2007) ("[I]n assessing the sufficiency of a § 10(b) claim, we . . . observe the heighted pleading requirements of [Rule] 9(b).").

However, an objection to the Complaint for failure to plead fraud with particularity pursuant to Rule 9(b) is usually raised on a motion to dismiss under Rule 12(b)(6). Capitol Life Ins. Co. v. Rosen, 69 F.R.D. 83, 89 (E.D. Pa. 1975) (Fogel, J.); see also Fed. R. Civ. P. 12(b) (requiring that "[e]very defense to a claim for relief in any pleading [] be asserted in the responsive pleading if one is required"). In general, a defendant must serve a responsive pleading within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). The Court does not see any circumstances that warrant allowing Defendants to raise this objection more than two years after they were served with the Complaint. Cf. Capitol Life Ins. Co., 69 F.R.D. at 88–89 (providing defendant with a "special opportunity" to raise a Rule 9(b) objection at a damages hearing because defendant was represented by a new attorney).

9

for trial." Stell v. PMC Techs., Inc., No. 04-5739, 2006 WL 2540776, at *1 (E.D. Pa. Aug. 29, 2006) (Baylson, J.) (citing Fed. R. Civ. P. 56(e)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as so the material facts."). Summary judgment is appropriate if the adverse party fails to rebut by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. Bowman v. Am. Homecare Supply, LLC, No. 07-3945, 2008 WL 4787558, at *5 (E.D. Pa. Oct. 30, 2008) (Baylson, J.) (citation omitted).

## VI. Discussion

### A. Timeliness of SEC's Claims

As noted above, the parties dispute whether Defendants' alleged misconduct amounts to a continuing violation that commenced outside the statute of limitations, or a series of repeated, discrete violations, some of which occurred during the limitations period and are separately actionable.

Statutes of limitations "se[t] a fixed date when exposure to the specified Government enforcement efforts en[d]." Kokesh v. SEC, 137 S.Ct. 1635, 1641 (2017) (quoting Gabelli v. SEC, 568 U.S. 442 (2013)). The applicable statute of limitations in a securities action is five years pursuant to 28 U.S.C. § 2462. Section 2462 provides, in relevant part:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil find, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when it first accrued . . . .

10

28 U.S.C. § 2462. A claim "first accrue[s] when it has "come into existence as an enforceable claim or right." William A. Graham Co. v. Haughey, 646 F.3d 138, 146 (3d Cir. 2011) (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)). The "standard rule is that a claim accrues when the plaintiff has a complete and present cause of action." Gabelli, 568 U.S. at 448 (citation and internal quotation marks omitted); see also New Jersey v. RRI Energy Mid-Atl. Power Holdings, LLC, 960 F. Supp. 2d 512, 524 (E.D. Pa. 2013) (Gardner, J.) (citing Haughey, 646 F.3d at 146) ("[A] claim accrues when all elements of the cause of action have objectively come into existence.")). In SEC enforcement actions for civil penalties, "[t]he five-year clock in § 2462 begins to tick when the fraud occurs, not when it is discovered." Gabelli, 568 U.S. at 448 (stating that "the most natural reading of the statute" is that "a claim based on fraud accrues–and the five-year clock begins to tick–when a defendant's allegedly fraudulent conduct occurs").

The Supreme Court recently held that the five-year statute of limitations in Section 2462 applies to disgorgement in SEC enforcement actions. Kokesh, 137 S.Ct. 1642. The Eleventh Circuit has held the SEC's request for declaratory relief is similarly a "penalty" subject to Section 2462. SEC v. Graham, 823 F.3d 1357, 1363–64 (11th Cir. 2016). However, there is disagreement amongst circuit courts about whether an injunction is a "penalty" subject to the statute of limitations. Compare Id. at 1361–62 (holding that injunctions are not penalties subject to Section 2462) and SEC v. Collyard, 861 F.3d 760, 764–65 (8th Cir. 2017) (same), with SEC v. Bartek, 484 F. App'x 949, 956–57 (5th Cir. 2012) (holding that a permanent injunction is subject to Section 2462). The only securities case within the Third Circuit to address whether an injunction is subject to Section 2462 is Gentile, 2017 WL 6371301, at *4, in which Judge Linares of the District of New Jersey concluded that an "obey-the-law" injunction is a "penalty" for purposes of Section 2462 because it would "stigmatize Defendant in the eyes of the public."

11

The SEC does not dispute that any securities violations that occurred prior to August 8, 2011–five years before the Complaint was filed–are time-barred. (See Resp. at 7.) Accordingly, the Court need not address whether a request for a permanent injunction or declaratory relief is a "penalty" subject to Section 2462 in order to rule on Defendants' Motion for Summary Judgment.

The Court notes that the Third Circuit has not interpreted Section 2462 in the context of securities claims. However, other circuit courts have instructed that when misconduct constitutes one "continuing violation" of securities laws that commenced prior to the statute of limitations, the action is time-barred. See Kokesh, 884 F.3d at 983. The Tenth Circuit found that "a violation is a continuing one 'when the conduct as a whole can be considered a single course of conduct.'" Id. at 982 (quoting Sierra Club v. Okla. Gas & Elec. Co., 816 F.3d 666, 672 (10th Cir. 2016)). In contrast, where misconduct amounts to discrete violations, some of which occurred during the limitations period, the claims commencing during the limitations period may proceed. See Birkelbach v. SEC, 751 F.3d 472, 479 (7th Cir. 2014) (holding that each instance where defendant failed to supervise a subordinate who engaged in trading misconduct was a distinct violation of the duty to supervise and created a separate claim).

On remand from the Supreme Court, the Tenth Circuit in Kokesh held that the owner of investment-advisor firms was liable for disgorgement of each misappropriation of funds that occurred during the five-year limitations period. 884 F.3d at 979. Some of defendant's misappropriations violated the terms of valid contracts between defendant's advisor firms and business development companies, while others were authorized by amended contracts that were only executed because investors had been defrauded. Id. at 985. The court explained that just because persons engaged in misconduct over an extended period of time does not necessarily mean that they engaged in a single, continuing violation, for statute of limitations purposes. Id. at 983.

In Kokesh, because defendant's misappropriations amounted to "a series of repeated violations of an identical nature," and the SEC's claim did not depend on the cumulative nature of defendant's acts, the Tenth Circuit held that each misappropriation was actionable for five years after its occurrence. Id. (quoting Figueroa v. D.C. Metro. Police Dep't, 633 F.3d 1129, 1135 (D.C. Cir. 2011)).

The Kirks contend that Kokesh "demonstrates conclusively" that the misconduct alleged in the Complaint constitutes a single, unified, continuing violation that accrued in October 2006, the date of the first violation alleged in the Complaint. (See Defs.' MSJ, at 12.) This Court disagrees and concludes that Kokesh suggests that Defendants' alleged misrepresentations or omissions are separately actionable. As in Kokesh, where the defendant's misappropriations involved separate contracts, here, the Kirks alleged misrepresentations or omissions involved several distinct communications with different clients, and the Kirks allegedly generated undisclosed revenue from separate transactions. Moreover, similar to Kokesh, where the SEC's claim did not depend on the cumulative nature of defendant's acts, in this case, the SEC has alleged several allegedly fraudulent acts within the five-year limitations period, each of which could serve as a basis for a securities fraud claim.

Defendants also argue that because the SEC alleges that Defendants engaged in a fraudulent scheme that began outside the statute of limitations, the SEC's claims are time-barred in their entirety. The Court does not find this argument persuasive. (See Defs.' MSJ, at 13.) Though the Third Circuit has not considered whether violations within a fraudulent scheme that straddles the statute of limitations are time-barred, as the SEC points out, judges in other circuits have not treated similar fraudulent schemes as single violations that date back to their origin. See, e.g., SEC v. Jankovic, No. 15 Civ. 1248 (KPF), 2018 WL 301160, at *5–6 (S.D.N.Y. Jan. 4, 2018)

13

(considering only investments made within statutory period to conclude that disgorgement and prejudgment interest requested by SEC was warranted in action alleging fraudulent scheme); SEC v. Straub, No. 11 Civ. 9645 (RJS), 2016 WL 5793398, at *20 (S.D.N.Y. Sept. 30, 2016) (in SEC enforcement action alleging bribery scheme, granting in part and denying in part cross-motions for summary judgment on statute of limitations where only portions of the SEC's bribery claims accrued during the statute of limitations); SEC v. Microtune, Inc., 783 F. Supp. 2d 867, 882–83 (N.D. Tex. 2011) (dismissing SEC's claims arising from fraudulent stock option backdating scheme that accrued outside the statute of limitations).

Moreover, although the SEC alleges that Defendants engaged in a continuing failure to comply with their duty of disclosure (See Defs.' MSJ, at 12), each violation of that duty creates a separate claim. See Birkelbach, 751 F.3d at 479 (rejecting as "absurd" defendant's argument that his continuing failure to supervise a subordinate was a single, indivisible act that accrued the first time he failed to supervise). Though Defendants' duty to disclose the true nature of clients' costs may have been a continuing duty, each representation or omission allegedly in violation of that duty would create a separate claim. See id. As the Seventh Circuit has recognized, if several violations of a continuing duty were viewed as one violation for statute of limitations purposes, one who violated such a duty but avoided detection for five years could continue to violate that duty forever without liability. See id.

Accordingly, the Court concludes that the SEC's claims that accrued before August 8, 2011, five years before the Complaint was filed, are time-barred by Section 2462. The SEC's remaining claims that accrued after August 8, 2011, however, are not time-barred. Following the Tenth Circuit in Kokesh, to conclude otherwise would effectively confer immunity upon the Kirks for their alleged, repeated misconduct. See Kokesh, 884 F.3d at 985 ("To hold that Defendant's

misappropriations constituted only one continuing violation would do much more than provide repose for ancient misdeeds . . . . Defendant could take $100 a year for five years and then misappropriate tens of thousands without fear of liability. We cannot countenance such a result, nor do we think that a proper interpretation of § 2462 requires us to.").

The Court notes that the SEC's Motion for Summary Judgement includes a section of "Specific Examples of Clients Defrauded by Defendants after August 8, 2011" in recognition of the Court's decision in Kokesh, which was issued after the Complaint in this case was filed. (SEC MSJ, at 18.) This section includes alleged misrepresentations and omissions that occurred prior to August 8, 2011, such as John Kirk's March 2011 response to the City of Philadelphia's questionnaire. Even though Defendants' liability cannot be based on acts that took place prior to August 8, 2011, the Court has discretion over whether such facts are admissible under Federal Rule of Evidence 404(b). See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (holding that evidence of time-barred claims may be admitted as "background evidence" supporting timely claims). Therefore, Defendants' Motion for Summary Judgment on the statute of limitations issue is denied.

## VII. Conclusion

Defendants' Motion for Summary Judgment based on the statute of limitations will be denied.

An Appropriate Order follows.

O:\CIVIL 16\16-4291 SEC v Place\16cv4291 Memo re MSJ on SoL.docx